**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 12 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GEORGE ENGASSER, an individual, | No. 21-55217 |
| Plaintiff, | D.C. No. 2:19-cv-07973-ODW-PLA |
| v. | |
| TETRA TECH, INC., a Delaware corporation, | MEMORANDUM* |
| Defendant-third-party-plaintiff-Appellant, | |
| v. | |
| MECHOOPDA CULTURAL RESOURCE PRESERVATION ENTERPRISE, | |
| Third-party-defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted July 15, 2022
Pasadena, California

Before: BENNETT and COLLINS, Circuit Judges, and FOOTE,** District Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Elizabeth E. Foote, United States District Judge for the Western District of Louisiana, sitting by designation.

Appellant Tetra Tech appeals the dismissal of its third-party complaint against appellee Mechoopda Cultural Resource Preservation Enterprise ("MCRPE") for lack of subject-matter jurisdiction. MCRPE is "a wholly owned, unincorporated entity" of the Mechoopda Indian Tribe of Chico Rancheria ("Tribe"), "operating as an arm of the Tribe and sharing the Tribe's sovereignty and sovereign immunity." We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Tetra Tech argues that MCRPE impliedly waived sovereign immunity by entering into the Professional Services Agreement ("PSA"). Section IV.D of the PSA provides that "[n]othing herein shall be construed as a waiver of sovereign immunity." Tetra Tech dismisses § IV.D as a "generalized reservation of sovereign immunity" that is negated by § IV.F, the Dispute Resolution Provision ("DRP"). The DRP requires the parties to "meet and confer" regarding grievances arising from the PSA "[p]rior to commencing litigation" and states that "[a]ny court with competent jurisdiction shall have the authority *to enforce this provision*" (emphasis added). Tetra Tech relies on the phrase "[p]rior to commencing litigation" to argue that the DRP "creates a right of action against MCRPE." Tetra Tech also argues that the PSA imposes various contractual obligations on MCRPE, and that there is no tribal court in which it can sue MCRPE. So unless we find a waiver of sovereign immunity, MCRPE will have had the benefit of Tetra Tech's performance, and Tetra Tech has no forum in which it can hold MCRPE to account for its contractual

2

breaches.

MCRPE did not waive sovereign immunity by entering into the PSA. The Supreme Court has held that "a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (citation and internal quotations omitted). Here, the Tribe *reserved* sovereign immunity in the PSA in § IV.D. Moreover, § IV.D is the only part of the PSA that expressly discusses sovereign immunity, and we have held that a tribe retained sovereign immunity when the "only express discussion of sovereign immunity" in the agreement at issue "indicates that the Tribe did not intend to waive its sovereign immunity." *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affs.*, 255 F.3d 801, 812–13 (9th Cir. 2001).

Section IV.F also reflects that MCRPE never waived sovereign immunity. Contrary to Tetra Tech's argument, the DRP does not say that MCRPE agreed to be sued for the kinds of claims brought by Tetra Tech. The DRP states that "[a]ny court with competent jurisdiction shall have the authority to enforce this provision and to determine if the meet and confer process has been satisfied." Thus, the phrase "to enforce *this provision*" limits the scope of any judicial enforcement *to the DRP*, and § IV.D states that "[n]othing *herein* shall be construed as a waiver of sovereign immunity" (emphasis added), showing that the Tribe's reservation of sovereign immunity covers the entire PSA. Thus, even if the DRP must be read as a sort of

3

waiver, the DRP and § IV.D can be reasonably read together as permitting judicial enforcement of the meet and confer process of the DRP, but not permitting Tetra Tech to sue MCRPE for breaches of contract. "The usual rule of interpretation of contracts is to read provisions so that they harmonize with each other, not contradict each other." *Peterson v. Minidoka Cnty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir. 1997), *amended*, 132 F.3d 1258 (9th Cir. 1997).

Tetra Tech attempts to distinguish this case from *Miller v. Wright*, 705 F.3d 919 (9th Cir. 2013). The tribe in *Miller* agreed to a provision that would resolve disputes between it and the State of Washington through mediation. *See id*. at 925. We held that the tribe had not waived sovereign immunity because "mediation generally is not binding and does not reflect an intent to submit to adjudication by a non-tribal entity." *Id*. Tetra Tech argues that "*Miller* has no relevance to this case because the PSA plainly contemplates that disputes unresolved by the DRP will be resolved in <u>court</u>, not mediation." But the PSA does not state that "disputes unresolved by the DRP will be resolved in court"; it states that "[a]ny court with competent jurisdiction shall have the authority to enforce [the DRP] and to determine if the meet and confer process has been satisfied." Thus, Tetra Tech has failed to distinguish this case from *Miller*.

Tetra Tech also argues that the district court must be a "court with competent jurisdiction" because, otherwise, "there are *no judicial or tribal forums whatsoever*

4

where a litigant can assert a civil claim against MCRPE or the Tribe" and, "without any judicial forum able to assert jurisdiction over MCRPE, the DRP clause is meaningless." Relatedly, Tetra Tech argues that permitting the Tribe to invoke sovereign immunity here "allows tribal entities like the MCRPE to engage in opportunism" because "[u]nder the district court's opinion, a tribe can agree to indemnify [a] private entity, . . . collect the benefits of the contract, and, at the last minute, assert its sovereign immunity to avoid the very commitments that enticed private parties to enter into the agreement in the first place."

Tetra Tech's argument has significant equitable force. Because there is no tribal court available, MCRPE cannot be held to account for its supposed contractual breaches. That is unfair. But we are barred from invoking equity here to assist Tetra Tech. The Supreme Court, while recognizing that "immunity can harm those who are unaware that they are dealing with a tribe," nevertheless deferred to Congress "to weigh and accommodate the competing policy concerns and reliance interests" and upheld the exercise of sovereign immunity in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998). *Id*. at 758–59; *see also Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989) ("Indian sovereignty, like that of other sovereigns, is not a discretionary principle subject to . . . the equities of a given situation.").

Tetra Tech cannot claim to have been unaware of the risks of dealing with a

5

sovereign tribe, including the risk that the tribe may exercise sovereign immunity and that the tribe may lack a tribal court, because Tetra Tech does not (and cannot) deny that it "regularly contracts with other Native tribes and fully understands how a tribe expressly waives its sovereign immunity." But even were those facts not clear, we would still lack authority to invoke equity to remedy Tetra Tech's failure to negotiate or enter into a contract that gave it the right to sue MCRPE. MCRPE may well be doing itself and other tribal entities no favors by invoking sovereign immunity to deny Tetra Tech any forum in which to sue for breach of contract.[1] The consequences of its position may inure to the significant detriment of such tribal entities. But MCRPE has the right to insist that we enforce the contract as written, and we do so here.

**AFFIRMED.**[2]

---

[1] *See* Oral Argument 15:00–16:36 (counsel for MCRPE agreeing that "there is no place [Tetra Tech] can sue the Tribe for breaches of contract"). The Tribe's brief also states that "[MCRPE] has the right to establish a tribal court, but there is not a requirement that it must."

[2] The parties shall bear their own costs.